IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA
OKLAHOMA CITY

FILED

AUG 1 8 2020

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

**RONNIE CHANCE**
**PLAINTIFF**

§
§
§
§
§
§

**VS.**

§
§
§

CASE NO: CIV-20-831-PRW

**OKLAHOMA DEPARTMENT**
**OF CORRECTIONS,      et al.**
**JARRED ROBERTS;**
**(Individual Capacity)**
**STARLA PHILLIPS;**
**(Individual Capacity)**
**SHARON MCCOY**
**(Individual Capacity)**
      **DEFENDANTS**

§
§
§
§
§
§
§
§
§
§

**JURY DEMAND: PLAINTIFF**

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983

Ronnie Chance

Respectfully Submitted
Ronnie M. Chance *Pro Se*  #694509
**P.O.Box 316**
**Taft, OK 74463**

## APPENDIX OF EXHIBITS

EXHIBIT 1: The example of what Diet and Gastroesophageal Reflux Disease (GERD) is and target foods.

EXHIBIT 2: Request to Staff #143786-10, dated January 29th 2019; to the Chaplain.

EXHIBIT 3: Request to Staff #143896-10, dated February 15th 2019; to Chaplain Remer.

EXHIBIT 4: Oklahoma of Department of Corrections Kosher/Halal Diet Request Form, dated April 19th 2019

EXHIBIT 5: Interoffice Memorandum Jess Dunn Correctional Center, dated April 11th 2019.

EXHIBIT 6: Request to Staff #143825-4 dated February 4th 2019; to Ms.Phillips.

EXHIBIT 7: Prepared for Oklahoma Department of Corrections male 2017 Nutrition Management Services, Menu for the yard, 3 pages, backed

EXHIBIT 8: Request to Staff #144444-7, dated May 7th 2019; to Ms.Phillips/ Food Service, backed

EXHIBIT 9: Request to Staff #144661-7, dated June 3rd 2019; to Ms.Phillips/ Food Service, backed

EXHIBIT 10: Inmate/Offender Grievance #JDG-19-28, dated July 15th 2019.

EXHIBIT 11: Inmate/Offender Grievance, dated June 21st 2019 received stamp Warden's office Jess Dunn Correctional Center, June 25th 2019.

EXHIBIT 12: Grievance Decision from Reviewing Authority, Typo June 24th 2016 should say June 24th 2019 Grievance # JDG19-28.

EXHIBIT 13: Misconduct/Grievance Appeal to Administrative Review Authority, Grievance #JDG19-28 dated August 12th 2019, backed

EXHIBIT 14: Oklahoma Department of Corrections Administrative Review Authority, Jess Dunn Correctional Center 19-28 dated August 28th 2019.

EXHIBIT 15: Inmate Offender Grievance Process, 12 pages, backed

EXHIBIT 16: Inmate Request, dated May 24th 2019

EXHIBIT 17: Inmate Requests, dated January 31st 2018/ February 12th 2018/ Request to staffs, dated June 14th 2019/ October 18th 2019/ December 16th 2019/ June 1st 2020; For Reference to Offender Statement Report, 22 pages, backed

EXHIBIT 18: Request to Staff #144251-7, dated April 11th 2019; to Jarred Roberts

EXHIBIT 19: Request to Staff #144446-7, dated May 7th 2019; to Jarred Roberts

EXHIBIT 20: Request to Staff, dated January 23rd 2018; to Records, asking for Financial Statement

EXHIBIT 21: Request to Staff, dated January 23rd 2018; to Records, asking if Oklahoma Department of Corrections can take 100 percent of the Plaintiff's money.

EXHIBIT 22: Inmate Request, dated January 29th 2018; to Records

EXHIBIT 23: Inmate Request, dated January 31st 2018; to Trust Fund, asking for Financial Statement.

EXHIBIT 24: Inmate Request, dated January 31st 2018; to Trust Fund, asking for Ops.

EXHIBIT 25: Inmate Request, dated February 12th 2018; to Trust Fund

EXHIBIT 26: Inmate Request, dated February 14th 2018; to Trust Fund, asking for dates of all legal disbursements.

EXHIBIT 27: Inmate Request, dated February 14th 2018; to Trust Fund, asking where legal disbursements are coming from.

EXHIBIT 28: Inmate Request, dated February 15th 2018; to Mrs. Clark, asking for commissary account balance.

EXHIBIT 29: Inmate Request, dated February 19th 2018; to Trust Fund, asking the total bill for legal co-pays.

EXHIBIT 30: Inmate Request, dated February 19th 2018; to Trust Fund, asking for commissary account balance.

EXHIBIT 31: Inmate Request, dated February 19th 2018; to Trust Fund, asking if all legal postage and co-pays are old bills.

EXHIBIT 32: Inmate Request, dated June 17th 2018; to law library, asking for Ops on taking 100 percent of all the Plaintiff's money, no answer.

EXHIBIT 33: Request To Staff #142646-8, received at the law library on June 10th 2018, Was originally addressed to law library, given back to the Plaintiff, entitled to Trust Fund, not the Plaintiff's handwriting, dated July 9th 2018.

EXHIBIT 34: Inmate Request, dated August 1st 2019; to Trust Fund, asking about $20 on the Plaintiff's books 2 pages.

EXHIBIT 35:  Email, dated August 23rd 201; from Laura Lucht

EXHIBIT 36: Request To Staff #145789-2, dated November 19th 2019; to Records, asking again is it legal to charge the plaintiff 100 percent of what he has.

EXHIBIT 37: Request To Staff #143490-8, dated December 04th 2018; to Trust Fund, asking how is being taken for savings.

EXHIBIT 38: Request To Staff, dated January 15th 2019; to Warden McCoy, asking who to talk to about the Plaintiff's trust fund account, no reply.

EXHIBIT 39: Request To Staff #144764-7, dated June 14th 2019; to Jarred Roberts, asking for list of meds the Plaintiff was being charged for.

EXHIBIT 40:  Request To Staff #144965-7, dated July 11th 2019; to Jarred Roberts, asking for list of med the Plaintiff was being charged for again, no disposition, backed.

EXHIBIT 41: Same exact Request to Staff #144965-7 as EXHIBIT 40 except now has an answer and has different received stamp at the bottom of the page, backed.

EXHIBIT 42: Inmate/Offender Grievance, Grievance #JDG19-41, dated August 15th 2019

EXHIBIT 43: Grievance Decision from Reviewing Authority, Grievance #JDG19-41, dated August 16th 2019.

EXHIBIT 44: The List of Meds given to the Plaintiff for EXHIBIT 43, 2 pages.

EXHIBIT 45: Misconduct Grievance Appeal to Administrative Review Authority, Grievance Appeal #JDG19-41, dated October 21st 2019 bottom of page.

EXHIBIT 46: State of Oklahoma, Oklahoma Department of Corrections Medical Services, dated November 25th 2019, Grievance #JDG19-41

EXHIBIT 47: State of Oklahoma, Oklahoma Department of Corrections Medical Services, dated December 19th 2019, Grievance #JDG19-41; The Plaintiff being issued a restriction warning, (Retaliatory Act).

EXHIBIT 48: Request To Staff #145569-7, dated October 14th 2019; to Mr.Roberts/ Medical Supervisor, asking how many pages are in the list of meds the Plaintiff is being charged for, stated two pages.

EXHIBIT 49: Oklahoma Department of Corrections Request for Health Services, dated April 30th 2019; asking if Roberts is making headway on chronic care issues.

EXHIBIT 50: Oklahoma Department of Corrections Request for Health Services, dated June 11th 2019; asking Dr. Edde if dandruff shampoo is chronic care.

EXHIBIT 51: Oklahoma Department of Corrections Request for Health Services, dated June 11th 2019; telling Dr. Edde, that Roberts said that Dr. Edde can make all of the Plaintiff's meds chronic care.

EXHIBIT 52: Oklahoma Department of Corrections Request for Health Services, dated June 11th 2019; asking Dr. Edde why the Plaintiff is not chronic care for laxative and fiber pills that the Plaintiff has taken for years and has to take for the rest of his life.

EXHIBIT 53: Oklahoma Department of Corrections Request for Health Services, dated June 11th 2019; telling Dr. Edde to keep the damage in the plaintiffs esophagus and stomach from becoming cancerous sooner the Plaintiff has to continue taking acid reflux medications for now on, has already been taken for years, asking how that is not chronic care.

EXHIBIT 54: Oklahoma Department of Corrections Request for Health Services, dated June 11th 2019; asking why the Plaintiff's allergy meds that the Plaintiff has taken for years is not chronic care.

EXHIBIT 55: Oklahoma Department of Corrections Offender Obligation Report, dated June 21st 2019, 7 pages.

EXHIBIT 56: Request To Staff, dated October 18th 2019; to Law Library/Supervisor, sent to James Crabtree Correction Center, no answer, asking for all or some of the legal disbursements and if they were forwarded to Oklahoma City, Oklahoma.

EXHIBIT 57: Chronic Illness Management, Section 14 Health Services Op-140137, effective date August 28th 2018, 6 pages.

EXHIBIT 58: Request to Staff #143488-7, dated December 4th 2018; to Med/Jarred Roberts, asking why the Plaintiff was being charged for his medicines.

EXHIBIT 59: Inmate/Offender Grievance, dated June 21st 2019, Grievance #JDG19-29; The Plaintiff asking why he is being charged for chronic care, backed.

EXHIBIT 60: State of Oklahoma, Oklahoma Department of Corrections, Jess Dunn Correctional Center, dated August 1st 2019, Grievance #JDG19-29; stated plaintiff failed to properly submit.

EXHIBIT 61: After submitting EXHIBIT 59 again with EXHIBIT 58 attached, New Grievance Decision from Reviewing Authority, Grievance number now #JDG19-39, received October 15th 2019.

EXHIBIT 62: Misconduct Grievance Appeal to Administrative Review Authority, dated October 17th 2019 bottom of page, Grievance #JDG19-39, The Plaintiff quoting chronic care, backed.

EXHIBIT 63: State of Oklahoma, Oklahoma Department of Corrections Medical Services, dated November 20th 2019; and stating additional time needed to answer Grievance #JDG19-39.

EXHIBIT 64: State of Oklahoma, Oklahoma Department of Corrections Medical Services, dated December 19th 2019, Grievance #JDG19-39; response from Oklahoma Department of Corrections Medical Department.

EXHIBIT 65: Oklahoma Department of Corrections Request for Health Services, dated July 5th 2019; asking how many pages are in the Plaintiff's entire medical file, no answer.

EXHIBIT 66: Oklahoma Department of Corrections Request for Health Services, dated July 22nd 2019; asking to Marsha about med records.

EXHIBIT 67: Oklahoma Department of Corrections Request for Health Services, dated August 7th 2019; asking Marsha not to forget to make the Plaintiff an appointment to see how much his medical file would cost, said to submit on Request to Staff.

EXHIBIT 68: Request To Staff #145213-7, dated August 15th 2019; to Med/Marsha, asking how many pages are in the Plaintiff's medical file so he could decide if he wanted to sign a disbursement.

EXHIBIT69: Request to Staff #145577-7, dated October 15th 2019; to Mr.Roberts/ Medical, asking if there is any way for the Plaintiff to get an electronic copy of it medical file.

EXHIBIT 70: Request To Staff #145791-7, dated 11-19-2019; to Med/Records/Roberts, telling Roberts the Plaintiff has asked in every way possible for total number in his medical file, so he can sign a disbursement, Roberts stated he had already made a copy of the Plaintiff's files, which is not true, backed.

EXHIBIT 71: The actual list of meds the Plaintiff is being charged for, 3 pages, backed.

EXHIBIT 72: Oklahoma Department Of Corrections Request For Health Services, dated October 18th 2017; The Plaintiff asking to see a back specialist.

EXHIBIT 73: Oklahoma Department of Corrections Request for Health Services, dated January 16th 2018; stating the Plaintiff's mid to upper part of Plaintiff's back is hurting, asking for an X-ray.

EXHIBIT 74: Oklahoma Department of Corrections Request for Health Services, dated February 21st 2018; and The Plaintiff stating that medical showed him two large bone spurs in his lower back and something wrong with his neck, but then told him that nothing was wrong with him.

EXHIBIT 75: Oklahoma Department of Corrections Request for Health Services, dated March 7th 2018; The Plaintiff asking for a back brace.

EXHIBIT 76: Oklahoma Department of Corrections Request for Health Services, dated July 3rd 2018; The Plaintiff asking to see the Doctor about his back for a possible pinched nerve.

EXHIBIT 77: Oklahoma Department Of Corrections Request For Health Services, dated October 7th 2018; The Plaintiff asking to see Medical Records Keeper Ms.Rosey asking for copies of his X-rays on October 23rd 2014 and August 17th 2017 and doctor statements.

EXHIBIT 78: Request to Staff #143247-7, dated October 15th 2018; asking Medical Records Keeper Rosey again for copies of X-rays on October 23rd 2014 and August 17th 2017 and doctor statements.

EXHIBIT 79: Oklahoma Department of Corrections Request for Health Services, dated December 5th 2018; The Plaintiff asking for an extra mattress for back pain.

EXHIBIT 80: Oklahoma Department of Corrections Request for Health Services, dated September 13th 2019; and The Plaintiff asking if pain meds where chronic care for bone spurs and neck pain.

EXHIBIT 81: Request To Staff #145451-7, dated September 26th 2019; the Plaintiff asking again for copy of back X-ray done on October 23rd 2014, backed.

EXHIBIT 82: Request To Staff #145568-7, dated October 14th 2019; to Mr.Roberts/ Med Supervisor, and The Plaintiff asking how much copies of X-ray on cd cost to send home.

EXHIBIT 83: Fidelity Health Care Consultants, Doctor Statement from Andrea Byers, stating Oklahoma Department of Corrections is not properly caring for the Plaintiff, 9 pages.

EXHIBIT 84: GI follow up telephone note, dated January 3rd 2019 time at 09:40

EXHIBIT 85: Express Mobile Diagnostic Services, LLC. December 23rd, 2019, Shoulder X-rays, 4 pages

EXHIBIT 86: Saint Francis Health System, December 31st 2019, 4 pages: Fluoroscopy Joint Injection for MRI or CT Shoulder Right

EXHIBIT 87: Petitioner's letter to Oklahoma Office of Management and Enterprise Services, dated June 10th 2020, 2 pages

EXHIBIT 88: Recognition of Petitioner's letter being received by Oklahoma Office of Management and Enterprise Services, dated June 17th 2020 1 page

EXHIBIT 89: Oklahoma Office of Management and Enterprise Services, response to petitioner's sent June 10th 2020, received response June 25th 2020

EXHIBIT 90: Oklahoma Department of Corrections Request for health services, dated April 14th 2020

EXHIBIT 91: Oklahoma Department of Corrections Request for health services, dated April 29th 2020

EXHIBIT 92: Oklahoma Department of Corrections Request for health services, dated July 29th 2020

## TABLE OF AUTHORITIES

**JURISDICTION AND VENUE**     2

**ADMINSTRATIVE REMEDIES WITH OKLAHOMA OFFICE OF**

**MANAGEMENT AND ENTERPRISE SERVICES**     2

**PRISIONER LITIGATION REFORM ACT**     3

*Warren v. Westchester County Jail*, S.D.N.Y. 2000, 106 F.Supp.2d 559     3

cf. *Long vs. Lafko* 254 F.Supp.2d 444 S.D.N.Y. (2003)     3

*Johnson v. True*, W.D. Va. 2000, 125 F.Supp.2d 186.     3

**I. INTRODUCTORY STATEMENT**     3

**II. STATEMENT OF THE CASE**     4

**III. STANDARD OF REVIEW UNDER 42 U.S.C. § 1983**     5

**IV. INDIVIDUAL LIABILITY FOR DEFENDANT**     6

*Healthy city Board of Ed. vs. Doyle* 429 U.S. 274, 280 97

S.Ct. 568, 572 (1977)     6

*Will vs. Michigan Dep't of State Police* 491 U.S. 58,

71 109 S.Ct. 2304 105 L.Ed.2d 45 (1989)     6

*Hess vs. Port Authority Trans-Hudson* 513 U.S. 30 115 S.Ct. 394 (1994)     6

*Ram Ditta vs. Maryland Nat'l Capital Park and Planning Comm.*

822 F.2d 456 (4th Cir. 1987)     7

**(a) THE WELL ESTABLISHED LAW**     7

*Dist. of Columbia v. Wesby* 138 S.Ct. 577, 589 (2018)     7

*Delaughter v. Woodall* 909 F.3d 130, 139 (5th Cir. 2018)     7

*Messerschmidt v. Millender* 132 S.Ct. 1235 (2012)     7

*Trask v. Franco* 446 F.3d at 1046 (10th Cir. 2006)     8

*Martinez v. Carson*, 697 F.3d at 1255     8

*Monroe v. Pape* 365 U.S. 167, 187, 81 S.Ct. 473 (1961)     8

*Train v. City of Albuquerque*, 629 F.Supp.2d 1243, 1251 (D.N.M. 2009)     8

*Torts § 442.*     8

*Mt. Healthy City Board of Ed. v. Doyle* 429 U.S. 274 280, 97,

S.Ct. 568 572-3 (1977)                                                                    8

*Hess v. Port Authority Trans—Hudson* 513 U.S. 30 115 S.Ct. 394 (1994)            8

*Ram Ditta v. Maryland Nat'l Capital Park and Planning Comm.* 822 F.2d 456

(4th Cir. 1987)                                                                          8

*Board of County Commissioners of Delaware County, Sheriff v. Association*

*Of County Commissioners of Oklahoma Self-Insurance Group* 2014 Ok 87 339

P.3d 866 (2014)                                                                            8

*Mitchell v. Forsyth* 472 U.S. at 511, 526 (1985)                                    8

**V. STATUTE OF LIMITATIONS AND EQUITABLE TOLLING**                 9

*McCarty v. Gilchrist*, 646 F.3d 1281 (10th Cir. 2011)                            9

*Johnson v. Garrison*, 805 Fed. Appx. 589 (10th Cir. 2020)                       9

*Gonzalez v. Hasty*, 651 F.3d 318, 323 (2d Cir. 2011)                              9

*Burnett v. Grattan*, 468 U.S. 42, 50, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984)       10

*Battle v. Ledford*, 912 F.3d 708, 715 (4th Cir. 2019), (quoting *Tomanio*,

446 U.S. at 490, 100 S.Ct. 1790)                                                         10

*Gonzalez*, 651 F.3d at 322-24                                                            10

*Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005)                           10

*Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)                              10

*Clifford v. Gibbs*, 298 F.3d 328, 333 (5th Cir. 2002)                            10

*Battle*, 912 F.3d at 720                                                                10

*Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)       10

*Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)        11

*Baker v. Board of Regents of the State of Kansas*, 991 F.2d 628, 632 (10th Cir. 1993)   11

*Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963,

969 (10th Cir. 1994)                                                                    11

**APPENDIX OF EXHIBITS**                                                          37,45

**COUNT I.**

**DENIAL OF PROPER MEDICAL CARE**                                                  12

*Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994)   17

*Gaudreault v. Municipality of Salem Mass.*, 923 F.2d 203,
208 (1st Cir. 1990) .......... 17

*Greeno v. Litscher*, 13 Fed. Appx 370 (7th Cir. 2001) .......... 17

*Sanderson v. Friedman*, 2000 WL 1721052 (N.D. Cal. 2000) .......... 17

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60, 23 Fed. R. Serv. 3d
922 (9th Cir. 1992) .......... 18

*Monmouth County Correctional Institutional Inmates v. Lanzaro*,
834 F.2d 326, 347, 90 A.L.R. Fed. 631 (3d Cir. 1987) .......... 18

*White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990) .......... 18

*Boretti v. Wiscomb*, 930 F.2d 1150, 1155 (6th Cir. 1991) .......... 18

*Johnson v. Bowers*, 884 F.2d 1053, 1056 (8th Cir. 1989) .......... 18

*Thompson v. Gibson,* 289 F.3d 1218 (10th Cir. 2002) .......... 18

**COUNT II.**

**DENIAL OF BASIC HUMAN NEEDS** .......... 19

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1976-77, 128
L.Ed.2d 811 (1994) .......... 20

*Whitely v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89
L.Ed.2d 251 (1986) .......... 20

Body of principles for the protection of all persons under any form of
Detention or imprisonment, G.A. Reg 43/173, Annex 43 U.N GAOR Supp.
(No. 49) at 298, U.N. Doc, A/43/49 (1988) .......... 20

Basic principles for the treatment of prisoners, G.A. Reg 45/171. Annex 45
U.N. GAOR Supp. (No. 49A), at 200, U.N. Doc A/45/49 (1990) .......... 20

*Cooper v. Gwinn*, 171 W. Va., 245, 298 S.E.2d 781, 794-95 (1981) .......... 21

**COUNT III.**

**POVERTY LINE AND DENIAL OF EQAUL RIGHTS**
**AND EQUAL PROTECTION** .......... 22

*Davenport v. DeRobertis*, 844 F.2d 1310, 1315 (7th Cir. 1988) .......... 23

*Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) .......... 23

*Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed. 59 (1981) — 23

*Reynolds v. Wagner*, 128 F.3d 166 (3d Cir. 1997) — 28

*Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) — 28

*Deshaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109, S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989) — 28

**COUNT IV**

**CRUEL AND UNUSUAL PUNISHMENT** — 28

*Gregg v. Georgia,* 428 U.S. 153, 169-173 96 S.Ct. 2909, 2923, 49 L.Ed.2d 859 (1976) — 28

*57 Calif. L. Rev.* 839 (1969) — 28

*Wilkerson v. Utah*, 99 U.S. 130, 136, 25 L.Ed. 345 (1878) — 28

*In re Kemmler*, 136 U.S. 436, 447, 10 S.Ct. 930, 933, 34 L.Ed. 519 (1890) — 28

*Trop v. Dulles*, 356, U.S. 86, 100-101, 78 S.Ct. 590, 597, 598, 2 L.Ed.2d. 630 (1958) — 29

*Weems v. United States*, 217 U.S. 349, 373, 30 S.Ct. 544, 551, 54 L.Ed. 793 (1910) — 29

*Jackson v. Bishop*, 404 F.2d 571, 579 (C. A8 1968) — 29

*Weems v. United States,* Supra, 217 U.S. at 378, 30 S.Ct. at 553 — 29

*Wilkerson v. Utah,* Supra, 99 U.S. at 136 — 29

*Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) — 30

**COUNT V**

**DELIBERATE INDIFFERENCE EIGHTH AMENDMENT VIOLATION** — 30

*Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998) — 30

*Delaney v. DeTella*, 256 F.3d 679 (7th Cir. 2001) — 30

*Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) — 31

*Crawford-El v. Britton*, 523 U.S. 574, 592, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) — 31

**COUNT VI**

**FIRST AMENDMENT RETALATION CLAIM** — 32

*Shabazz v. Askins,* 14 F. 3d 533 (10th Cir. 1994)                                    33

*Spruytte v. Govorchin,* 961 F.Supp. 1094 (W.D. Mich. 1997)                            33

*Smith v. Maschner,* 899 F.2d 940, 950 (10th Cir. 1990)                              33

*Buise v. Hudkins,* 584 F.2d 223 (7Th Cir. 1978)                                     33

*Crawford-El v. Britton,* 523 U.S. 574, 118 S. Ct. 1584, 140 L.Ed.2d 759 (1998)        33

*J. Estelle v. J.W. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50

L.Ed.2d 251 (1976)                                                                     33

U.S.C.A Const Amend 8; 42 U.S.C.A §1983                                                33

**DAMAGES RELIEF REQUESTED**                                                           36

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA
### OKLAHOMA CITY

RONNIE M.  CHANCE       §
           PLAINTIFF      §
     §
     §
     §
     §
VS.      §
     §          CASE NO: CIV-20-831-PRW
     §
OKLAHOMA DEPARTMENT      §
OF CORRECTIONS,    et al.      §
 JARRED ROBERTS;      §
(Individual Capacity)      §
STARLA PHILLIPS;      §           JURY DEMAND: PLAINTIFF
(Individual Capacity)      §
 SHARON MCCOY      §
(Individual Capacity)      §
      DEFENDANTS      §

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983

COMES NOW, Ronnie Chance, proceeding *Pro Se*, specially appearing to hereby file this civil rights complaint against the Oklahoma Department of Corrections in Oklahoma City Oklahoma; Jared Roberts; Starla Phillips; and Warden Sharon McCoy of the Jess Dunn Correctional Center in Taft Oklahoma. The Oklahoma Department of Corrections and all Defendants' named herein had the motive, means, and opportunity to willfully violate the U.S. Constitution while acting under color of statute, ordinance, regulation, custom, and usage, of the State of Oklahoma.

1

## JURISDICTION AND VENUE

This is a Civil Rights action arising under 42 U.S.C. §1983 and this court has jurisdiction pursuant to 28 U.S.C. §§1331 (federal question jurisdiction) and §1343 (civil rights jurisdiction). Venue in this court is also proper pursuant to 28 U.S.C. §1391 because the Oklahoma Department of Corrections in their capacity conducts their headquarters in Oklahoma City, in the Western District of Oklahoma.

## ADMINSTRATIVE REMEDIES WITH OKLAHOMA OFFICE OF MANAGEMENT AND ENTERPRISE SERVICES

The Plaintiff has exhausted his administrative remedies regarding the issues relevant to this suit as of June 25th 2020. Furthermore, the Plaintiff had discharged his obligation under the Government Tort Claims Act on June 10th 2020 by making a tort claim to the Oklahoma Office of Management and Enterprise Services Risk Management Department. Pl. Ex. #87. On June 17th 2020, OMES acknowledged such claim and issued a claim number to the same. Pl. Ex. #88. By doing so, the State had stated that it would make every effort to investigate the claims raised by the Plaintiff. Less than one week later, the OMES Risk Management Department concluded its arbitrary investigation on June 25th 2020 with a biolerplate response and no resolution. Pl. Ex. #89. The instant lawsuit ensued.

2

## PRISIONER LITIGATION REFORM ACT

Title 42 U.S.C.A. § 1997e requires prisoners to exhaust all administrative remedies that are available. As shown in the instant case all available remedies have been exhausted or become un-exhaustible. Further, the current Complaint should pass muster pursuant to 28 U.S.C.A. § 1915A, as there are several meritorious claims for relief that are not frivolous and that process should be served. Although it is true in some instances the Prison Litigation Reform Act (PLRA) does not require that prisoner exhaust prison remedies before commencing suit claiming violation of Eight Amendment right to be free from cruel and unusual punishment. *Warren v. Westchester County Jail* 106 F.Supp.2d 559 S.D.N.Y. (2000) cf. *Long vs. Lafko* 254 F.Supp.2d 444 S.D.N.Y. (2003). The Plaintiff has done so to attempt to remedy the issues relevant to this Complaint. See *Johnson v. True*, 125 F.Supp.2d 186 W.D. Va. (2000) ("Prison Litigation Reform Act did not deprive court of subject matter jurisdiction over inmate's § 1983 claims against prison officials for deliberate indifference to his medical need and excessive use of force, even if some claims within complaint had not been exhausted.") *Id*.

## I.
## INTRODUCTORY STATEMENT

The Plaintiff is not an educated man and he has attempted to follow all procedures and guidelines with diligence and to the best of his ability. It was not the intention of the Plaintiff to sue or pursue these matters in court. In fact, the Plaintiff as you will see made every attempt to resolve these issues that he could.  The Prison system is supposed to be a place of learning and rehabilitation, so one can be a productive member of society. If a

person is to be treated inhumanely by the people that are supposed to be guiding the individual in their efforts to become a productive citizen. What would be the value of making someone suffer more than usual? Being in prison and realizing your mistakes and the long road to come is an arduous process. The prison employees are here to ensure that the inmate gets the guidance, basic necessities, and *help* in their need for rehabilitation. Basic necessities are food, clothing, shelter, and proper medical care, and a reasonable person would think that even a lay person would understand the need for the basic necessities. When an employee of a prison or other persons associated with the prison or prison operations see an inhumane situation is, or has, occurred, the prison has a duty to stop or fix the injustice quickly—so as to do no harm to the prisoner. In the instant case, the prisoner was ignored, led astray, misinformed, and threatened as to create confusion, severe frustration, pain, and unnecessary suffering. Even after many attempts to resolve multiple medical issues and utilizing all available resources, the Plaintiff seemingly could not get these issues resolved. This brings us to the Defendants' in this case. All people that are mentioned herein are or where employees of the Oklahoma Department of Corrections.

## II.
## STATEMENT OF THE CASE

On or about April 20th 2015, the last time the Plaintiff was allowed to get canteen and get the basic necessities of life. As a result, the Plaintiff was left to forage for his own food and necessities. After being diagnosed with Diet and Gastroesophageal Reflux Disease on January 3rd 2019 by Dr. Hussein A. Bitar, MD, at Oklahoma University

4

Medical Center in Oklahoma City. The Plaintiff was subsequently denied by the Defendants' any type of medical diet that would help the Plaintiff. After all available resources and diligent efforts by the Plaintiff to correct the issues, Plaintiff was left without a proper amount of food that he could eat for approximately six months. After the Defendants knew or should have known of the Plaintiff's medical issues. The Plaintiff was left with multiple serious medical issues that were continuously ignored and not properly treated by Defendants'. The Defendants' calculated scheme occurred within the administrative structure due to the allegation of insufficient process of paperwork. After many attempts to resolve multiple issues, the Plaintiff was threatened with punishment on December 19th 2019, thus, officially ending all grievances.

### III.
### STANDARD OF REVIEW UNDER 42 U.S.C. §1983

Pursuant to 42 U.S.C. § 1983, Civil action for deprivation of rights are: "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected , any citizen of the United States or other person within the jurisdiction there of to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, for purposes of this section and Act of congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia"

## IV.
## <u>INDIVIDUAL LIABILITY FOR DEFENDANT</u>

As Defendants' are being sued however, in their individual capacities as employees of the Oklahoma Department of Corrections, government officials *are* entitled to qualified immunity under 42 U.S.C. § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. In the instant case, Defendants' are being sued in their individual capacities, in addition to **not** being considered as a government official. The Eleventh Amendment provides sovereign immunity in some circumstances for governmental agencies. *Healthy city Board of Ed. vs. Doyle* 429 U.S. 274, 280 97 S.Ct. 568, 572 (1977)("[i]mmunity is afforded to state agencies that may be properly characterized as an arm of the State.") *Will vs. Michigan Dep't of State Police* 491 U.S. 58, 71 109 S.Ct. 2304 105 L.Ed.2d 45 (1989)("This too applies as well to "state employees acting in their official capacities.") To note, the Defendants' are being sued in their individual capacities. To further discuss this issue, the court in *Hess* stated inquiries should be guided by the Eleventh Amendment's twin reasons for being "judgment depleting state treasuries, and maintaining the integrity retained by each State in our federal system." *Hess vs. Port Authority Trans-Hudson* 513 U.S. 30 115 S.Ct. 394 (1994). The Supreme Court went on to state "the impetus for the Eleventh Amendment... the prevention of federal court judgments that must be paid out by the State's treasury.... [a]ccordingly, Courts of Appeals have recognized the vulnerability of the State's purse as the most salient factor for the Eleventh Amendment." *Id.*   Thus *Hess* established that in "making a

6

determination as to entitlement to Eleventh Amendment immunity a number of factors must be considered, but that *Ram Ditta* was correct that the state treasury factor is the most important." *Id.* See also *Ram Ditta vs. Maryland Nat'l Capital Park and Planning Comm.* 822 F.2d 456 (4th Cir. 1987). A judgment against the individual Defendants' would not be paid out by the state treasury, thus the Defendants' are not immune from suit.

**(a)**
**THE WELL ESTABLISHED LAW**

Defendants' have willfully violated well established constitutional law which rises to a clearly established right to adequate and reasonable medical care as will be proposed in this complaint *infra*. See *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018). See also *Delaughter v. Woodall*, 909 F.3d 130, 139 (5th Cir. 2018) ("Clearly established law is determined by controlling authority or a robust consensus of persuasive authority that defines the contours of the right in question with a high degree of particularity")(internal quotation marks omitted)("This means the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right, although it is not necessary for controlling precedent to have held the officials exact act was unlawful"). *Id.* at 139 *Messerschmidt v. Millender*, 132 S.Ct. 1235 (2012) ("whether an official is protected by qualified immunity may be held personally liable for an alleged unlawful action generally depends on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken"). Government actors may be liable for the

7

constitutional violations that another committed, if the actors "[s]et in motion a series of events that the Defendant knew or reasonably should have known would cause others to deprive the Plaintiff of their constitutional right," thus establishing the "requisite casual connection" between the government actors conduct and Plaintiff's constitutional deprivations. See *Trask v. Franco*, 446 F.3d 1046 (10th Cir. 2006), and The Tenth Circuit has explained that § 1983 liability should be "read against the background of tort liability that makes a man responsible for natural consequences for his actions. *Martinez v. Carson*, 697 F.3d at 1255. ("Defendants are liable for the harm permanently caused by their conduct). (Quoting *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473 (1961) [A] Plaintiff who established liability for deprivations for constitutional right actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations. The recovery should be guided by common law tort principles including principle of causation…. "*Train v. City of Albuquerque*, 629 F. Supp. 2d 1243, 1251 (D.N.M. 2009); *Torts § 442*; *Mt. Health City Board of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572-3 (1977); *Hess v. Port Authority Trans-Hudson*, 513 U.S. 30, 115 S.Ct. 394 (1994); *Ram Ditta v. Maryland Nat'l Capital Park and Planning Comm.*, 822 F.2d 456 (4th Cir. 1987); *Board of County Commissioners of Delaware County, Sheriff v. Association of County Commissioners of Oklahoma Self-Insurance Group* 2014 Ok. 87, 339 P.3d 866 (2014); *Mitchell v. Forsyth*, 472 U.S. at 511, 526 (3d Cir. 1985).

**V.**
**STATUTE OF LIMITATIONS AND EQUITABLE TOLLING**

Under Oklahoma law the statute of limitations is two years. As seen herein the Plaintiff is well within the two year statute. Pl.Ex. #14 Grievance J.D.C.C. 19-28 was exhausted on August 28th 2019.   Pl.Ex. #47. Grievance exhaustion of JDG 19-41 on December 19th 2019. Pl.Ex. #64 Grievance exhaustion JDG 19-39 December 19th 2019. Pursuant to 12 O.S. § 95, the time to bring an action under 42 U.S.C. § 1983 is two years. *McCarty v. Gilchrist*, 646 F. 3d 1281 (10th Cir. 2011) ("The statute of limitations period for a § 1983 claim is dictated by the statute of limitations in the state which claim arose, in Oklahoma, that is two years.")  Also see *Johnson v. Garrison*, 805 Fed. Appx. 589 (10th Cir. 2020), holding "[a]ssuming Oklahoma has no tolling provision allowing for the exhaustion of mandatory prison grievance procedures, we must consider whether that omission is contrary to § 1983's goals. As the Second Circuit noted in *Gonzalez v. Hasty*, 651 F.3d 318, 323 (2d Cir. 2011), a prisoner who must complete the mandatory prison grievance procedures before filing suit faces a catch-22: "the prisoner who files suit prior to exhausting administrative remedies risks dismissal based upon § 1997e; whereas the prisoner who waits to exhaust his administrative remedies risks dismissal based upon untimeliness." (Internal quotation marks omitted). Moreover, if Oklahoma tolling law precludes tolling during the pendency of a prison grievance, it "could permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievance." *Id.* (brackets and internal quotation marks omitted). The Supreme Court has directed that "[a]n appropriate limitations period must be responsive to… practicalities

9

that are involved in litigating federal civil rights claims." *Burnett v. Grattan*, 468 U.S. 42, 50, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). One of the pracitalities involved in a prisoner § 1983 suit is exhaustion of mandatory prison grievance procedures. "The Court has further suggested that tolling of § 1983 limitations may be necessary where a remedy 'is structured to require previous resort to state proceedings, so that the claim may not even be maintained in federal court unless such resort be had.' *Battle v. Ledford*, 912 F.3d 708, 715 (4th Cir. 2019) (quoting *Tomanio*, 446 U.S. at 490, 100 S.Ct. 1790).

Thus, we conclude that Oklahoma's lack of a tolling provision to allow for the exhaustion of mandatory prison grievances is contrary to § 1983 goals. In so holding, we join several other circuits that have applied "federal law to equitably toll § 1983 limitations during the PLRA exhaustion period." *Id.* At 719; accord *Gonzalez*, 651 F.3d at 322-24; *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); see also *Clifford v. Gibbs*, 298 F.3d 328, 333 (5th Cir. 2002) (without expressly applying federal equitable tolling principles, granting prisoner's "request to equitably toll limitations on his § 1983 action during the pendency of [the federal] action and during any additional state administrative proceedings") Applying this holding to Johnson's situation, the statute of limitations was tolled during the mandatory grievance process and his claim is therefore timely. See *Battle*, 912 F.3d at 720 (holding "the clock would only stop for the length of the state's exhaustion period"). See *Johnson v. Garrison*, 805 Fed. Appx. , 589 (10th Cir. March 24th 2020). Circuit Judge Nancy L. Maritz; The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e (a), requires "proper exhaustion of administrative remedies", See *Woodford v. Ngo*, 548 U.S. 81, 84,

126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) "[p]roper exhaustion… means using all steps that the agency holds out, and doing so properly", *Id*. At 90, 126 S.Ct. 2378 (internal quotation marks omitted). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural ruel-ruels that are defined not by the PLRA, but by the prison grievance process itself." See *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citation and internal quotation mark omitted). Under Oklahoma Department of Corrections Inmate/Offender Grievance process section 09 Programs page: 16 Op-090124 effective date: 04/11/2019 (VIII) (D) (1) "The ruling of the ARA is final and will conclude the internal administrative process available to the inmate/offender within the jurisdiction of the ODOC. The inmate/offender will have satisfied the exhaustion of the internal administrative remedies required by Oklahoma Statute 57 O.S. § 564." See exhausted grievances Pl.Ex. #14; Pl.Ex. #47; Pl.Ex. #64. See letter to Office of Management and Enterprise Services, Pl.Ex. #87 (2 pages), acknowledgement of said letter Pl.Ex. #88 and response Pl.Ex. #89   Furthermore, federal law controls issues related to when federal causes of action accrue.  In general under the federal discovery rule, claims accrue and "[t]he statute of limitations begins to run when the Plaintiff knows of the existence and cause of the injury which is the basis of his action." *Baker v. Board of Regents of the State of Kansas*, 991 F.2d 628, 632 (10th Cir. 1993); Indus. *Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)

## COUNT I.
## DENIAL OF PROPER MEDICAL CARE

The Defendant Roberts has a duty to make sure the Plaintiff had a proper diet to fit the Plaintiff's medical needs.  As the Health Administrator, this would be a reasonable obligation.  Furthermore, at all times Defendant Roberts knew or should have known of the Plaintiff's need for a medical diet. After years of being treated for stomach problems and many medical visits, request to staff, medical requests, it ended up being other non-medically trained staff members to attempt to assure that the Plaintiff got proper medical care: to no avail.  The first complaint is the denial of proper amount of food that the Plaintiff could eat without making the Plaintiff physically ill with vomiting, severe abdominal pain, diarrhea, and severe acid reflux. The Plaintiff was later diagnosed with Diet and Gastroesophageal Reflux Disease on January 3rd 2019 at Oklahoma University Medical Center in Oklahoma City, Oklahoma by Dr. Hussein A. Bitar, MD. (See Pl.Ex #1).  This was also discussed with Jess Dunn Correctional Center's medical department with PA Heather for a GI follow up telephone note report #0103-0594 on January 7th 2019, electronically signed by George Salem, MD. Pl.Ex #84.  Further, the Plaintiff was provided this information from the Oklahoma University Medical Center doctors to inform the Plaintiff of his dietary needs. Additionally, the Plaintiff had multiple discussions with Defendant Roberts on these issues and the attending physician Dr.

Richard Edde. The Plaintiff even changed his religious status to try and get food that was more suitable for his needs. Pl.Ex #2 and #3. [1]

Moreover, the Plaintiff wrote multiple requests to staff to food service supervisor Defendant Starla Phillips. The Plaintiff explained in detail the seriousness of his needs and asked if Defendant Phillips could get him the kosher meals he needed sooner than the 60 days that the Chaplain indicated that it takes to achieve such change. See Pl.Ex #8 and #9. [2] The Plaintiff sent two requests, both went unanswered, to Defendant Phillips about the need for a proper amount of food. Pl.Ex #8 and #9. The Plaintiff grieved these issues through the administrative process to Defendant Sharon McCoy. [3] Pl.Ex #10; Pl.Ex #12; Pl.Ex #13; Pl.Ex #14. To note, the amount of time it took obtain suitable meals is constitutionally unacceptable. The Plaintiff ask the court to pay attention to Pl.Ex #10 and #11 these were sent to the Warden's office for the same reason on two separate staff members Defendant Phillips and Defendant Roberts. [4] Next the grievance

---

[1] To bring to the court's attention, the Plaintiff ask the court to take note that the religious aspect is The Plaintiff's belief, but The Plaintiff never attempted to get on kosher for his diet before this because here at Jess Dunn Correctional Center you can be punished for not following your religion if you are on kosher or halal Pl.Ex #4 and #5. The Plaintiff went for kosher only after it was evident that was his only option. Because the only diets that are offered here at Jess Dunn Correction Center are veggie, healthy heart, bland, and or no beans, which for various reasons the Plaintiff cannot eat these, excluding kosher and halal. See Pl.Ex #6; See Pl.Ex #7 for regular diet (DOCM17). The Plaintiff changed his C.R.C card to get on kosher meals. The Plaintiff was approved for kosher on April 19th 2019 See Pl.Ex #4.

[2] The Plaintiff even told Defendant Phillips that there were three meals in the kosher that have tomato products and he would be willing to try and scrape the tomato products off.

[3] Plaintiff submitted a grievance on Defendant Roberts for the same issue. Pl.Ex #11.

[4] Only one was answered because the Warden's assistant Amanda Conley told the Plaintiff "both grievances were about the same issue, so they only need one answer". Only way to know for sure that both grievances got to the Warden's office is the Warden's office stamp

13

decision from the Reviewing Authority Pl.Ex #12. Has a typo on the receipt date column it says June 24th 2016 it should say June 24th 2019. The answer to Pl.Ex #12 was given on August 8th 2019. Pl.Ex #12 says in part " It can take up to 60 days" Then goes on to state that "Food service verified on August 1[st] 2019 that the Plaintiff has been receiving kosher meals since July 16[th] 2019". By the Defendants own admission. The Plaintiff went without at least 88 days without a proper amount of food to eat after being approved for kosher. For reference for grievance procedure, see Pl.Ex #15. Now we come to the Misconduct Grievance appeal to Administrative Review Authority Pl.Ex #13. In this the Plaintiff told Oklahoma Department of Corrections Headquarters that the date food service said the Plaintiff got his kosher was not correct, and then the Plaintiff went on to tell the Administrative Review Authority that his count went 97 days without a proper amount of food to eat. The Plaintiff also told the Administrative Review Authority that this grievance appeal was for two grievances. The Administrative Review Authority's answer to that was Pl.Ex #14. "Administrative Review Authority said in part that the Plaintiff did not substantiate his appeal nor did he substantiate his appeal with any authority for an error. As such there has been nothing offered to the Director which indicates the reviewing authority's response is not proper. But then said the Plaintiff has satisfied the exhaustion of administrative remedies." See Pl.Ex #16 where the Plaintiff had his case manager attempt to get him food he could eat. [5] "The Oklahoma Department

---

[5] Now the Plaintiff asks the court "Was it not evident of the issues and severity of what was needed?" This process took from diagnosis January 3rd 2019 to July 23rd 2019 to get a decent amount of food to eat that would not cause the Plaintiff to become ill.

of Corrections has a duty to provide the basic necessities of life for the inmates under their control." So as not to cause harm or to violate constitutional rights of the inmate.

The Plaintiff has also been left with a debilitating and life threatening injury called lymphedema that The Plaintiff suffered due to a surgery that was performed at Oklahoma University Medical Center in Oklahoma City, Oklahoma. The surgery was performed to remove half of The Plaintiff's right kidney which had cancer that needed to be removed. This was done on or about November 30th 2015. The Plaintiff was then misdiagnosed and treated for the wrong illness for more than three years by Oklahoma University Medical Center. It was not until the Plaintiff was sent to Oklahoma State University Cardiology Center, in Tulsa, Ok for a C.T. Scan to get a second opinion on July 19th 2019. The Plaintiff was then told on or about August 20th 2019 that he has lymphedema. The Plaintiff has been hospitalized six times for severe infections in his right leg due to the lymphedema and the Plaintiff has had many more infections in his right leg treated here at Jess Dunn Correctional Center. Shortly after being told about the lymphedema the Plaintiff started seeing a physical therapist. The physical therapist recommended the Plaintiff have access to the equipment for at home treatments everyday. The physical therapist also gave medical reports on the severity the Plaintiff's injury and need for much greater medical care in multiple reports which has not been followed. The Plaintiff sent in two medical request Pl.Ex. #90 and #91 asking about an appointment to see a Lymphatic Surgeon. On both the Plaintiff was told yes but that was a lie Plaintiff was told by Dr. Edde that there was never an appointment with a Lymphatic surgeon made. To be sure, a life threatening illness not properly treated. See Pl.Ex #83.

15

The following are factors to be considered by the court:

1) The Supreme Court has always held that first "a medical need is serious" if it is one that has been diagnosed by a physician as mandating treatment; *Infra*; *Hill* ; *Gaudreault*;

2) a need is serious if it "one that is so obvious that even a lay person would easily recognize the necessity for a doctors attention"; *Infra*; *Greeno*; *Sanderson*;

3) a need is serious if it causes pain; *Infra*; *Cooper*; *White*;

4) If the medical condition "significantly affects an individual's daily activities", it may be deemed serious; *Infra; McGuckin; WMX Technologies Inc.;*

5) If the condition offers the possibility of a life-long handicap or permanent loss, it may be considered serious. *Infra; Johnson; Monmouth County Correctional*

The seriousness of the medical need cannot be judged with the benefit of hindsight. Thus, the relevant facts are those know at the time of the incident. Officials will not be held liable for conditions that appeared non-serious but turned out to be serious. Likewise, prison officials will be held liable for conditions that appeared serious even if they did not ultimately turn out to be serious. In addition, inmates need not wait until harm occurs for a court to find that serious needs are unmet.

Moreover, the Plaintiff has also been left for over four years with bone spurs in his back. This revelation had been diagnosed by two X-Rays one on October 23rd 2014, another on August 17th 2017 and one MRI Scan on December 14th 2017. The Plaintiff has asked to see a back and neck specialist on multiple occasions—simply told the Department of Corrections does not do back surgeries. Due to the Plaintiff not being sent

to a back specialist and being told that ODOC does not do back surgeries, it seems to be a legit policy thus making this particular issue not grievable. Incidentally, the Plaintiff's debilitating back issues ensued. See Pl.Ex #72, #73, #74, #75, #76, #77, #78, #79, #80, #81, and #82. To bring to the court's attention, the amount of time the Plaintiff has asked to see a back specialist to treat his back issues, and to address the excruciating pain. This gives the appearance of an extended and unnecessary infliction of pain on the Plaintiff.

Furthermore, the Plaintiff has still been left for an extended period of time awaiting shoulder surgery, (a different medical issue) whereas the Plaintiff had a shoulder X-ray on December 23rd 2019 at Jess Dunn Correctional Center Pl.Ex. #85. Then an MRI Scan at Saint Francis Hospital in Tulsa on his shoulder December 31st 2019 Pl.Ex. #86. As a result to the X-Rays and MRI Scan, the Plaintiff subsequently was told by Dr. Edde that he would be seeing a surgeon soon. It has been over six months and the Plaintiff still has not seen a surgeon. In fact, the Plaintiff did not even get a sling for his arm. The Plaintiff sent in multiple medical request asking if he was scheduled for surgery. Pl.Ex. #92. Which has been more than six months *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990); *Greeno v. Litscher*, 13 Fed. Appx. 370 (7th Cir. 2001) ("layperson should be able to ascertain that an inmate had a serious medical problem when he constantly complained of serious stomach pains and often vomited. Prison doctors, however, responded by telling him he would have to live with the condition, and gave him antacids. Eventually he was diagnosed with an ulcer"); *Sanderson v. Friedman*, 2000 WL 1721052 (N.D. Cal. 2000) ("any reasonable person should know that an inmate

who was suffering from numerous serious health conditions, including cancer, and end stage liver disease had serious medical needs"); *McGuckin v. Smith*, 974 F.2d 1050, 1059-60, 23 Fed. R. Serv. 3d 922 (9th Cir. 1992); *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347, 90 A.L.R. Fed. 631 (3d Cir. 1987); *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990) ("intended to inflict pain without medical justification"); *Boretti v. Wiscomb*, 930 F.2d 1150, 1155 (6th Cir. 1991) (pain inflicted "when relief is readily available" is actionable even if no lasting impact);

*Johnson v. Bowers*, 884 F.2d 1053, 1056 (8th Cir. 1989), and as modified on other grounds on reh'g, (Oct. 27 1989); *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347, 90 A.L.R. Fed. 631 (3d Cir. 1987) (life-long handicap or permanent loss is "serious medical need"); *Thompson v. Gibson*, 289 F.3d 1218 (10th Cir. 2002). Also see Oklahoma Department of Corrections Ops Section 14 Health Services Op-140121 page 1: Effective Date 04/25/2018 A.

Levels of care. 1: Level 1: Medically mandatory/emergency care immediate or urgent emergency care that is required to maintain or treat a life threatening illness or injury. II Referral Procedures (4-4347) (A) Level 1 medically/emergency care. (1) The inmate will be transported to a network provider unless the inmate's condition warrants immediate care; in such cases, the inmate will be transported to the nearest appropriate emergency facility. Transportation by Emergency Medical Services (EMS) will be within the protocols as established by the Oklahoma State Department of Health. (Level 2): medically necessary care routine care or treatment provided to maintain a chronic or non-life threatening condition that cannot be reasonably delayed without the risk of further complications, serious deterioration, significant pain or discomfort. (Level B): Urgent, the nurse (in a 24-hour care facility) or staff should consider the following as urgent and warranting contact of the on-call medical provider. (3) Any complaint relating to the abdomen such as diarrhea, vomiting, abdominal pain, or constipation of unusual duration. (4) Sports or work

injuries such as suspected fractures, severe joint injury, spinal injuries, etc. B (Level 2) medically necessary care (2) the referral will be sent to the regional physician within 24 hours for approval or disapproval.   (3) The regional physician will approve, disapprove, or forward the request to a specialist for online recommendations and triage within three working days. The medical provider will monitor the electronic referral for online specialist recommendations and reply as appropriate.

## COUNT II.
## DENIAL OF BASIC HUMAN NEEDS

The Eighth Amendment takes its meaning from the evolving standards of decency. To fulfill the objective component of the Eighth Amendment, the inmate must prove that the conduct of the Defendants violates "Contemporary standards of decency". This is answered in Pl.Ex #8 and #9 with the denial of even responding to the Plaintiff's plea for help. See also Pl.Ex #16 [6]  The Plaintiff even had staff e-mail Defendant Phillips. The Plaintiff made every attempt to resolve this issue and just to get food that he could eat without making the Plaintiff sick. The Plaintiff was left for at least six months after Oklahoma Department of Corrections knew or should have known that the Plaintiff had a stomach disease and needed an alternative diet. The Plaintiff was forced to forage for his own food. As you will see the Plaintiff was being stripped of every penny he had and was completely dependent on the state for any food, medical care, and basic necessities.  The Supreme Court has held that it is no longer tolerable for prison conditions and practices

---

[6] Defendant Phillips could have at all times provided for the Plaintiff's needs. Defendant Phillips would send rotten food and food that was left over from anywhere from one day to a week old to the Plaintiff. The Plaintiff even showed his lay in trays to two staff members that waited two days in a row to see what The Plaintiff was talking about both times at lunch. Both staff members were appalled at what they saw. They made comments like "what the hell is that" and "I promise I will go have a talk with Ms. Phillips myself, this is not right."

to deprive inmates of the "minimal civilized measures of life necessities." Justice Souter made much the same point when in the *Farmer v. Brennan* case he wrote, that the constitution does not allow "inhumane" prisons. In *Wilson v. Seiter* the court suggested that this term refers to the states responsibility to meet the "[i]dentifiable human need(s)" of inmates. The *Wilson* court described food, warmth, exercise, and safety as falling into this category of essentials. *Estelle* also identified "adequate medical care" as fitting into this grouping; *Farmer* added to the list of protection from physical abuse by other inmates. Perhaps the clearest definition of what courts consider the human needs encompassed by the Eighth Amendment comes from a non-prison Supreme Court opinion written by Chief Justice Rhenquist. See *Deshaney vs. Winnebago County Dep't of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 1005 103 L.Ed.2d 249 (1989)  In *Deshaney*, Chief Justice Rhenquist wrote a fuller explanation of the essentials that civilized society must provide the persons who are in state custody. When the state by affirmative exercise of its power so restrains an individual's liberty that it [renders] him unable to care for himself, and at the same time fails to provide for his basic human needs e.g. food, clothing, shelter, medical care, and reasonable safety. It transgresses the substantive limits on state action set by the Eighth Amendment, See *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994), *Whitely v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), Body of principles for the protection of all persons under any form of detention or imprisonment, G.A. reg 43/173, Annex, 43 U.N. GAOR Supp. (No 49) at 298, U.N. Doc, A/43/49 (1988). Basic principles for the treatment of prisoners, G.A. reg, 45/171, annex 45 U.N. GAOR. Supp.

(No 49A) at 200, U.N. Doc A/45/49 (1990). [7] The West Virginia Supreme Court of Appeals felt that these standards were the result of such a deliberate and thoughtful process and were so well thought out that it adopted them as law. *Cooper v. Gwinn*, 171 W. Va., 245, 298 S.E.2d 781, 794-95 (1981). In denying the Plaintiff proper food for his needs and denial of proper medical care after the Plaintiff was diagnosed with Diet and Gastroesophageal Reflux Disease and diagnosed with Lymphedema. Further, X-rays and MRI scan on the Plaintiff's back and neck went untreated. Also, the Plaintiff was diagnosed with a shoulder injury that went untreated. With the access to the correct health records, the Defendants knew or should have known of multiple serious medical issues that did not get properly treated for months and years, leaving the Plaintiff in unnecessary pain. The Defendants' were in clear violation of constitutional law as there was no need for the Plaintiff to go without foo; there was no need for the Plaintiff to go without physical therapy for a serious life threatening illness (Lymphedema) which put him at risk for serious life threatening infections; there was no need for the Plaintiff to go without shoulder surgery for an extended period of time leaving him in unnecessary pain; there was no need for the Plaintiff to go without seeing a back and neck specialist for years while incarcerated. Likewise, this caused unnecessary or wanton infliction of pain which is repugnant to the Eighth Amendment. As a result, the Plaintiff was without

---

[7] The American Correctional Association sponsored the Commission on Accreditation for Corrections, which has published the manual of standards for adult correctional Institutions (2002) and the manual of standards for adult local Detention Facilities (2002), See A.B.A. standards for criminal justice (1986.) See also e.g. *Rhem v. Malcolm*, 371 F. Supp. 594, 627 (S.D.N.Y 1974) affd and remanded, 507 F.2d. 333 (2d Cir. 1974)

means of providing for himself is a direct violation of the Eighth Amendment and stands for denial of basic human needs.

## COUNT III.
## POVERTY LINE AND DENIAL OF EQUAL RIGHTS AND EQUAL PROTECTION

In regards to the Plaintiff's poverty issues, the relentless charging by Defendants' of nearly all of the Plaintiff's available funds in his trust accounts from May 16th 2015 to present date, should not be overlooked. The Plaintiff has drawn from the prison canteen on two occasions in this time, one for $19.94 on August 5th 2019 and one for $1.75 after that. (See Pl.Ex #17.) The Plaintiff has been destitute for years and forced to forage for food and other necessities while incarcerated. Pl.Ex #9. In the instant case, the Plaintiff informed Defendant Phillips of not having any money to buy his own food, the Plaintiff also informed Defendant Roberts of the same issue on several occasions. See Pl.Ex #18, #19.

Furthermore, the Plaintiff has been unable to rectify these issues with Defendants' anytime he would mention issues about poverty. This is so, while Defendants' were purposefully depriving the Plaintiff of basic human necessities. The Plaintiff has asked in every way to Records, Trust Fund, and Law Library to try and stop the excessive charging of the Plaintiff's trust account to determine how and why this is being done. No Department has provided a plausible answer. See Pl.Ex #20, #21, #22, #23, #24, #25, #26, #27, #28, #29, #30, #31, #32, #33, #34, #35, #36, #37, and #38.[8] Defendant McCoy

---

[8] The Plaintiff urges the court to take notice of the deliberate run-around an inmate gets at the Jess Dunn Correctional Center. . The Plaintiff cannot proceed in the grievance process correctly without knowing the proper department or staff to communicate.

has never made any effort to answer the Plaintiff's grievance. [9]   The date the Plaintiff erroneously wrote on the request January 15th 2019. [10]   The Plaintiff made every attempt to resolve these issues before the point of judicial action.  So, the Plaintiff is still without funds in his trust account for which he can buy the bare necessities for himself. The Plaintiff is being relentlessly charged for nonexistent medical care it seems for his remaining time in Oklahoma Department of Corrections custody, thus never having available funds to purchase necessary items for proper health. [11]  See also *Davenport v. DeRobertis*, 844 F.2d 1310, 1315 (7th Cir. 1988). *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (Citing *Rhodes v. Chapman*), 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

Moreover, in leaving a prisoner with no money and not giving him a proper amount of food or medical care is certainly forcing him to scavenge for food.  Is cruel and unusual punishment according to the Eighth Amendment. The excessive charging to the Plaintiff's trust account are all in house legal co-pays, prescription co-pays, and medical co-pays. Although many cases have arose on the co-payment system and it has always been held that as long as the co-payment system does not deprive indigent prisoners of necessary care or basic necessities. Although courts has upheld the co-payment systems, therefore the Plaintiff cannot buy anything from canteen such as food,

---

[9] See Pl.Ex #38 request to staff to Defendant Warden McCoy

[10] Stamp correctly indicates January 15th "2020." An error on the part of the Plaintiff.

[11] The Poverty Line: Judge Posner wrote that the evolving nature of the Eighth Amendment means that the conditions in which prisoners are housed like the poverty line is a function of a society's standard of living. As that standard rises, the standard of (minimum decency) of prison conditions, like the poverty line, rises too.

medical supplies, stationary, and or hygiene leaving the Plaintiff completely destitute at Oklahoma Department of Corrections' mercy and not fully providing for him which is a violation of law. [12]  Surprisingly enough, the Plaintiff has been taking the same medication or a variation of the same medication from on or about December 2nd 2015 to present. Under Oklahoma Department of Corrections' own chronic care OPS Policy, Chronic Illness Management states "[c]hronic illness are defined as illnesses that are either ongoing or reoccurring over a course of several months to years." Pl.Ex #57 The OPS Policy goes on to state that the "Oklahoma Department of Corrections tracks the more common chronic illnesses as outlined in this procedure '*any*' disease or condition that is persistent or reoccurring is considered a chronic illness."[13] Pl.Ex #59.

By Defendants own admission, the Plaintiff was never to be charged for any medical or prescription co-pays that were for long lasting chronic care or diseases. Additionally, in Pl.Ex #62 the Plaintiff again quotes chronic care OPS. Pl.Ex #63 (Oklahoma Department of Corrections says they "need more time.") See also Pl.Ex #64 (The ODOC Medical Services response to the grievance of these issues indicates the Plaintiff is out of time because his request was not received in seven days.) Defendants'

---

[12] The co-payment system increased drastically on how many people are being charged on or about August 31st 2018. It was a very noticeable increase mainly due to the Oklahoma Department of correction poor budgetary policies.

[13] Plaintiff would like the court to take note that the Plaintiff used all available resources at his disposal to submit this. The Plaintiff quoted the exact OPS Inmate/Offender Grievance JDG 19-29 dated August 1st 2019 that indicated the Plaintiff failed to properly submit. See Pl.Ex #60. The Plaintiff resubmitted Pl.Ex #59. The Plaintiff received Pl.Ex #61 dated August 14th 2019 stated in part conditions or diseases that are long lasting are exempt from the $4.00 co-pay fees.

also state that the incident of which the Plaintiff complains occurred October 1st 2018.[14]
Pl.Ex #58.    The Plaintiff made multiple attempts to discover why he was being
relentlessly charged and for what, as illustrated in the record—a run-around. The Plaintiff
has clearly shown in previous exhibits that Defendants' do not follow the time lines
making it impossible for the inmate to investigate any issues relating to medical, food
service, or financial, which makes the seven day notice without any force or effect. [15]
Plaintiff's offender statement report. There is little to no medical or prescription co-pays
to be found until October 1st 2018, which is around the same time that Oklahoma
Department of Corrections supposedly got a new billing company, and then a massive fee
increase. Pl.Ex #17. The Offender Obligation Report states the Plaintiff has medical and
prescription co-pays all the way back to 2014. The Plaintiff questioned the attending
physician Dr. Richard Edde why he was being charged for his medications that are
critical for the Plaintiff to take, thus falling under the chronic care provisions of the
ODOC policies.[16]  Pl.Ex #50, #51, #52, #53, #54.  Looking through the lens of deliberate

---

[14] The Plaintiff would like the court to understand that you are only allowed to attach one request and this is an ongoing matter with many different forms associated with it. Also the Plaintiff has never been given notice when money has been taken from his trust account. For medical co-pays and prescription co-pays to do with chronic care. The only way you know you have been charged for any medical or prescription co-payments is if you ask for an inmate/offender statement and that costs money, *or* if you go to canteen and you are missing money

[15] The court should understand this was the first request to staff, but this was the first request to staff on December 4th 2018 not counting the request for health services, inmate request, and more request to staff all in a total around 35 or so different forms to try to resolve the chronic care or excessive charging or other forms associated with this issue all attached herein. Prior to this there is no way for the Plaintiff to know if in fact the Defendants could charge the Plaintiff 100%, because that question was never answered and is still ongoing.

[16] Dr. Richard Edde's reply was that he does not control billing. Furthermore, Dr. Edde has told the Plaintiff in person that he has voiced his complaints with Defendant Roberts on this over charging of the Plaintiff's trust account.

disregard for the Plaintiff's needs, the Eighth Amendment prescribes that no one is to be held in complete poverty, denied medical and chronic care, by the standards that have been set forth by Oklahoma Department of Corrections. It bears repeating, the Plaintiff was not to be charged for chronic care in the first place, which makes this needless suffering unreasonable. The Supreme Court has held that co-pay systems are not illegal unless they are implemented in a way as to deprive an inmate or possibly deter an inmate in seeking medical care. *Ibid*. The Plaintiff intends to prove in court with witnesses that this co-pay system instituted by the ODOC does just that, violates the law. Because the average inmate gets $14.45 each month, when an inmate is charged $4.00 for a visit and $4.00 for each medication which would take $8.00 at minimum for one visit and one medication which would be more than half the inmate's monthly gang pay the inmate statutorily receives. The Plaintiff intends to prove that this is a deterrent to seek medical attention for most inmates, thus limiting the financial exposure of the Jess Dunn Correctional Center's budget for inmate medical services. This is by design under the guise of official medical advice and care—unreasonable on its face. After review of Pl.Ex #39, #40, #41, #42, #43, #44, #45, #46, #47, #48, and #49 where the Plaintiff is lied to, ignored, and threatened for seeking appropriate medical care, again under the banner of official conduct. Pl.Ex #39. The Plaintiff ask for a copy of the list of medications that the Plaintiff is being charged for from Defendant Roberts. [17] Pl.Ex #40. This request to staff was not answered and Defendant Roberts neglected to issue a disposition. Pl.Ex

---

[17] Notice Defendant Roberts says it is 50 cents a page but does not say how many pages there are making it impossible to properly fill out a disbursement

#41.  Interestingly enough, on August 21st 2019, Plaintiff later received the same request from Defendant Roberts but with an answer and new Law Library reception stamps on Pl.Ex #42, and #48, where Defendant Roberts tells the Plaintiff there are two pages in the list of medications the Plaintiff is being charged for. Pl.Ex #43. [18]

So, for the response and the retaliatory threat by Oklahoma Department of Corrections on Pl.Ex #47 the Plaintiff cannot continue with any grievance now in the future.  Pl.Ex #55.  (Offender Obligations Report)  Even when the Plaintiff asked about legal co-pay receipts from James Crabtree Correctional Center, the Plaintiff did not receive a response. Pl.Ex #56 The Plaintiff has detected a common theme in the responses, or lack thereof, from Defendants' is one of deception and indifference.  This is clearly documented with all the exhibits attached herein.

Lastly, causing the Plaintiff physical pain and suffering in not allowing the Plaintiff to buy medical supplies, hygiene, stationary, and/or food, which are basic necessities is a blatant violation of the Eighth Amendment. Defendants' actions, in causing the Plaintiff to go without food or to eat food that would make the Plaintiff physically ill, gives the appearance of malicious intent and a denial of equal rights and equal protection against the Plaintiff. In today's society, it would not be held proper to

---

[18] Grievance decision from Reviewing Authority dated October 15th 2019. Pl.Ex. #44; Pl.Ex.#45 Misconduct Grievance Appeal to Administrative Review Authority dated October 21st 2019 where the Plaintiff tells ODOC that this is not all of the med list. Pl.Ex #46 is ODOC saying they need more time and telling the Plaintiff that an appropriate method for addressing any health concern is via the facility sick call process. See Pl.Ex #49, #50, #51, #52, #53, #54. Next Pl.Ex #47 the response dated October 19th 2019. ODOC threatens the Plaintiff if he does not properly submit the health concern, he will be punished. See Pl.Ex #48 Defendant Roberts openly lies saying there is two pages in the medication list the Plaintiff was asking for. The actual list of meds is Pl.Ex #71 which was five pages which the Plaintiff was given after he was threatened with punishment.

take every penny from any person and leave them no way of providing for themselves, without food, medicine, stationary, or hygiene. See *Reynolds v. Wagner*, 128 F.3d 166 (3d Cir. 1997) See e.g. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115, L.Ed.2d 271 (1991); *Deshaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109, S.Ct. 998, 1005, 103 L.Ed.2d. 249 (1989).

## COUNT IV.
## EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT

Justice Marshall delivered the opinion of the court regarding the history of the constitutional prohibition of cruel and unusual punishment which has been recounted at length in prior opinions of the court and need not be repeated here. See e.g. *Gregg v. Georgia*, 428 U.S. 153, 169-173 96 S.Ct. 2909, 2923, 49 L.Ed.2d 859 (1976) (Joint opinion of Stewart, Powell, and Stevens, JJ (herein after joint opinion)); see also *Granucci,* nor cruel and unusual punishment inflicted: the original meaning, 57 Calif. L. Rev. 839 (1969). It suffices to note that the primary concern of the drafters was to proscribe "torture(s)" and other "barbar(ous)" methods of punishment. *Id,* at 842. Accordingly, the court first applied the Eighth Amendment by comparing challenged methods of execution to concededly inhumane techniques of punishment. See *Wilkerson v. Utah*, 99 U.S. 130, 136, 25 L.Ed. 345 (1878). "([I]t is safe to affirm that punishments of torture….and all others in the same line of unnecessary cruelty, are forbidden by that amendment…)" *In re Kemmler*, 136 U.S. 436, 447, 10 S.Ct. 930, 933, 34 L.Ed. 519 (1890) "(Punishments are cruel when they involve torture or a lingering death…)" Our

more recent cases, however, have held that the amendment proscribes more than physically barbarous punishments. *Trop v. Dulles*, 356 U.S. 86, 100-101, 78 S.Ct. 590, 597, 598, 2 L.Ed.2d 630 (1958); *Weems v. United States*, 217 U.S. 349, 373, 30 S.Ct. 544, 551, 54 L.Ed. 793 (1910). The Amendment embodies "[b]road and idealistic concepts of dignity, civilized standards, humanity, and decency...." *Jackson v. Bishop*, 404 F.2d 571, 579 (C. A8 1968). *Weems* stated "[a]gainst which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards maturing society.'" *Weems v. United States*, *Supra*, 217 U.S. at 378, 30 S.Ct. at 553, or which "involve the unnecessary and wanton infliction of pain." *Wilkerson v. Utah*, *Supra*, 99 U.S. at 136. These elementary principles established the government's obligation to provide proper medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical " torture or a lingering death" *In re Kemmler*, the evils of most immediate concern to the drafters of the Amendment, in less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. *Ibid*. (emphasis added) The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common law view that it is but just the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.  We therefore conclude that deliberate indifference to serious medical needs of prisoner constitutes the "unnecessary and wanton infliction of pain" See

previous exhibits of this petition for reference to Plaintiff's serious medical needs and how he was left to suffer for years. See *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The record reflects and the instant Complaint passes muster that the Plaintiff has unreasonably suffered unnecessary harm and infliction of pain as to egregiously violate the Eighth Amendment protection against cruel and unusual punishment by Defendants'.

**COUNT V.**
**DELIBERATE INDIFFERENCE IN VIOLATION OF THE EIGHTH AMENDMENT**

Deliberate indifference standards applied to § 1983 claims is defined differently for the Eighth Amendment and municipal liability purposes in prison conditions, context, deliberate indifference is a subjective standard requiring actual knowledge of risk or harm by officials. See *Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998). Deliberate indifference finding can be established by proving existence of pattern of tortious conduct. An Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate to show deliberate indifference; it is enough that the official acted or failed to act despite their knowledge of a substantial risk of serious harm. U.S.C.A. Const. 8. See *Delany v. DeTella*, 256 F.3d 679 (7th Cir. 2001). In determining whether prison officials "had knowledge of the potential harm to inmate, for purposed of meeting deliberate indifference requirement under Eighth Amendment the Court of Appeals considers whether the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Id*. Const. Amendment VIII.

See *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir 1992); *Crawford-El v. Britton*, 523 U.S. 574, 592, 118 S.Ct. 1584, 140 L.Ed.2d (1998)("Inmate's allegation that prison officials knew of unconstitutional conditions but did nothing was sufficient to show deliberate indifference").

To bring to the Court's attention, Plaintiff Exhibit(s) #39, #40, #41, #42, #43, #44, #45, #46, #47, #48 the Plaintiff has been lied to, ignored, and even threatened, notwithstanding the lack of proper medical care.   In the hopes of not being redundant, the Plaintiff is illustrating in the record to show the sheer unwillingness of the Defendants' to resolve even simple issues. This is a common practice with the Defendants' to deter the inmate from seeking a resolution to their medical needs.  As a result, the retaliatory threat by Defendants' the Plaintiff will not continue with any grievance now or in the future because the Plaintiff cannot afford to be punished anymore. Pl.Ex #47.[19]  The Plaintiff intends to prove that he was denied proper medical care by Defendants' and that he was left to suffer. Previous exhibits show the Defendants' willful involvement in the malice and deliberate infliction of pain, denial of proper medical care, denial of a medical diet, and denial of basic human rights from anywhere from months to years.  Astonishingly, Plaintiff cannot even get a *complete* copy of his medical file after asking in every way possible. [20]  See Pl.Ex #65, #66, #67,

---

[19] Please take note that the Plaintiff has been left without proper amounts of food that he could eat, causing severe acid reflux, stomach cramps, diarrhea, and vomiting. Take note the Plaintiff has been left without proper medical care for very long periods of time for lymphedema, back, and neck, shoulder, and stomach problems which suggest gross negligence. With review of the X-rays, MRI Scans, C.T. Scans, Upper GI and other associated health records.

[20]  Says "you need to be more specific in your request and also says that medical has already made copies of your files and you were told to pick them up" This is misleading for one the Plaintiff has never received a complete total

#68, #69, #70. [21]  The only single file Defendant Roberts stated to come pick up was the file regarding one set of documents containing information pertaining to the Plaintiff's surgery at Oklahoma University Medical Center for the removal of cancer on the Plaintiff's right kidney.  Pl.Ex #70

Defendant's intentional and willful denial of proper medical care for multiple medical issues over a span of months and years, created a life threatening situation with the Plaintiff and causing severe pain in the process... Also see Conspiracy of Wrongs committed under 42 U.S.C. §1985. [22]

## COUNT VI.
## FIRST AMENDMENT RETALIATION CLAIMS

General claims brought under the due process clause for asserting rights that are not constitutionally protected and claims alleging that public officials are retaliating against an inmate for the exercise of a specific constitutional right.  First and foremost, an

---

copy of his medical file and that is exactly what the Plaintiff asked for. The only way for the Plaintiff to get anything out of his medical file is to get an appointment with the records keeper at medical. Then know the date, the doctor, and the hospital, to find out how many pages, and then leave and return to his unit to sign a disbursement. Then wait for a receipt and make another appointment with the records keeper in medical to receive the records. The Plaintiff was also even told a lawyer could get a copy of Plaintiff's medical file for him by Marsha Wilson and the Plaintiff never said he had a lawyer

[21] The Plaintiff has been literately told by Nurse Marsha Wilson at Jess Dunn Correctional Center who was overseer of the medical records at this time. That she would have to count each and every piece of documentation manually on the computer screen and it would take a couple of days. Then the Plaintiff was told again by Nurse Marsha Wilson it would take a couple of weeks.

[22] On this date July 2nd 2020 the Plaintiff was told by Dr. Andrea Byers at Fidelity Health Care Consultants that her office was contacted by Jess Dunn Correctional Center Medical Department. Dr. Byers office was instructed to not allow the Plaintiff to sign a release for his records to be open to Plaintiff's mother to monitor the Plaintiff's care. This certainly shows a malicious, malice, and deliberate attempt to stop the Plaintiff from seeking help with medical issues from an outside source.

inmate must show "an egregious abuse of government power" or behavior that "shocks the conscience." This is a demanding standard for the second type of claim the court set out the following three-part test for determining whether unconstitutional retaliation had occurred under this must be shown that: (1) the Plaintiff engaged in protected activity; (2) an adverse action was taken against the Plaintiff that "would deter a person of ordinary firmness from continuing to engage in the activity; (3) the adverse action was motivated at least in part by the Plaintiff's conduct. The *Shabazz* court stressed that, that punitive acts by prison officials that standing alone does not violate the constitution "may nevertheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." See *Shabazz v. Askins*, 14 F.3d 533 (10th Cir. 1994), *Spruytte v. Govorchin* 961 F. Supp. 1094 (W.D. Mich, 1997) Chronology of events from which retaliation may be plausibly inferred. See also *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990); *Buise v. Hudkins*, 584 F.2d 223 (7th Cir. 1978). The court indicated that under a recent Supreme Court decision it was not necessary that this point be shown by "clear and convincing proof. See, e.g. *Crawford-El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) Holding that to make out a retaliation claim the Plaintiff is not required to show by clear and convincing proof on a motion for summary judgment that the Defendant was motivated by a desire to punish Plaintiff for asserting constitutional rights). See *J. Estelle v. J.W. Gamble*; Punishments which are incompatible with evolving standards of decency that mark unnecessary or wanton infliction of pain are repugnant to the Eighth Amendment, Government has an obligation to provide proper medical care for those whom it is

punishing by incarceration. Infliction of unnecessary suffering on prisoners by failure to properly treat his medical needs is inconsistent with contemporary standards of decency and violates the Eight Amendment. Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. For inadequate medical care, prisoners must allege acts of omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. [23] This is obvious in the previous forms herein. U.S.C.A. Const. Amend. 8; 42 U.S.C.A. § 1983. This has been illustrated in all the previous records. See Also Oklahoma Department of Corrections Inmate/Offender Grievance Process Section-09 Programs page: 5 Op-090124 effective date 04/11/2019,

> (III) (D) Reprisals "An inmate/offender will not suffer reprisals for submitting a grievance in good faith" (1) A reprisal means any action or threat of action against anyone for using the grievance process. Actions take in accordance with the abuse of process procedure below or discipline for false statements are not reprisals. (2) A grievance may be submitted if the inmate/offender feels any reprisal has occurred. (3) The inmate/offender will not receive a misconduct report for submitted a grievance in good faith. (4) A misconduct report may be issued if an inmate/offender has made a threat in a grievance against staff, visitors, or another inmate/offender, or if an inmate/offender has provided a falsified, forged or fraudulent document as evidence in the complaint.

To that end if the Plaintiff had in fact done anything that would constitute punishment. The Oklahoma Department of Corrections Administrative Review Authority would have been required to document it in their final response. Not doing so is an admission that there was no violation to warrant a threat of punishment.

---

[23] According to Black's Law Dictionary *Omission* is defined as (1) a failure to do something (2) the act of leaving something out (3) the state of having been left out or of not having been done. (4) Something that is left out, left undone, or otherwise neglected.

## **CLOSING STATEMENT**

In closing, the way that a civilized society would have a prisoner treated, would not be denied of basic necessities, and left in immense amounts of pain for years without proper medical care, this would  be the way the Defendants' have treated the Plaintiff in the instant case. On that point, the Plaintiff was left without any feasible way of purchasing basic necessities for himself if the Defendants' would have acted reasonably. The Plaintiff certainly does not believe this is the way one should be treated under the law and not the way co-pay plans in prison were meant to operate.  As a prisoner, everyone says "give up, you are a number, you are property, it does not matter what happens to you." This is what a prisoner sometimes comes to believe. However, the Plaintiff holds that society cannot be this cruel or indifferent to our moral obligations. Today's prison system is more like legalized indentured servitude than a rehabilitation center. So much so prisoners are legally property of the state which opens a familiar door for others to commit human rights violations seemingly unchecked. As was the case in the days of slavery, society is not any more or less tolerable of the inhumane treatment of prisoners as it was then. No human being should be forced to suffer in pain for months to years in light of clearly documented medical issues that can be fixed or remedied.  It is the prayers of the Plaintiff that this will stop and not happen to anyone else.

## <u>RELIEF REQUESTED</u>

Premises considered, the Plaintiff respectfully request that the Western District of Oklahoma Grant this civil rights complaint, the damages requested therein and the following:

1.    Assert jurisdiction; and

2.    An order entering judgment in favor of Plaintiff; and

3.    A permanent injunction prohibiting the Defendants  from committing any retaliatory acts against Plaintiff; and

4.    The order granting compensation in the amount of $550,000; and

5.    An order granting reasonable service awards for the Plaintiff; and

6.    Proper training of staff in policy and human rights; and

7.    Any other relief this Court deems fit and proper.

Respectfully Submitted,

Ronnie M. Chance *Pro Se #694509*
**P.O.Box 316**
**Taft, OK 74463**

<u>Certificate of Service</u>

A copy of the foregoing was sent U.S. Mail on this day *13* of *Aug*, 2020

United States District Court
Western District of Oklahoma
200 NW 4th St. Rm. 1210
Oklahoma City, Ok 73102